IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ILLINOIS TOOL WORKS INC., a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-054-GMS |
| FRITO-LAY NORTH AMERICA, INC., f/k/a RECOT, INC., a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

ANSWERING BRIEF OF ILLINOIS TOOL WORKS IN OPPOSITION
TO FRITO-LAY'S MOTION THAT THE COURT NOT CONSIDER THE ISSUE OF
<u>PATENTABILITY OF THE CONTESTED SUBJECT MATTER IN THIS ACTION</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

*Attorneys for Plaintiff Illinois Tool Works Inc.*

OF COUNSEL:

DAY PITNEY LLP
Gerald Levy
Richard H. Brown
7 Times Square, 20th Floor
New York, NY 10036
(212) 297-5800

February 15, 2007

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                         ii

NATURE AND STAGE OF THE PROCEEDING                                          1

SUMMARY OF ARGUMENT                                                            1

STATEMENT OF FACTS                                                             3

    A.    Summary Of The Interference Proceeding                            3

    B.    The Changes In Regulations Governing Interference
            Proceedings                                                        8

ARGUMENT                                                                       9

I.    THE REQUIREMENTS FOR RAISING AN ISSSUE IN A
     SECTION 146 ACTION                                                  9

II.    ITW RAISED THE ISSUE OF UNPATENTABILITY TO THE
      BOARD AND REQUESTED A DECISION ON THAT ISSUE                        12

III.    EVEN IF THIS COURT WERE TO DECIDE THAT ITW DID
       NOT REQUEST THAT THE UNPATENTABILITY ISSUE BE
       DECIDED BY THE BOARD, IT SHOULD EXERCISE ITS
       DISCRETION AND ALLOW THIS ISSUE TO BE LITIGATED
       IN THIS ACTION                                                     14

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*Case v. CPC Int'l, Inc.*,
    730 F.2d 745 (Fed. Cir. 1984)                                      9, 10, 12

*Conservolite, Inc. v. Widmayer*,
    21 F.3d 1098 (Fed. Cir. 1994)                                   passim

*General Instrument Corp. v. Scientific-Atlanta, Inc.*,
    995 F.2d 209 (Fed. Cir. 1993)                            10, 11, 12, 14

*Hillman v. Shyamala*,
    55 USPQ2d 1220, 1221 (BPAI 2000)                           8

<u>Statutes</u>

35 U.S.C. § 135                               3, 10

35 U.S.C. § 141                               16

35 U.S.C. § 146                            passim

37 C.F.R. § 1.633(a)                         9, 15

37 C.F.R. § 41.121(a)(1)                  9, 14, 15

37 CFR § 1.601                             5, 8

37 CFR § 41                                 5, 15

37 CFR § 41.104(b)                           3

U.S.C. § 141                               16

U.S.C. §§ 102(a) and (b)                  6, 7, 16

## NATURE AND STAGE OF THE PROCEEDING

On January 22, 2006, Illinois Tool Works Inc. ("ITW") filed this action against Frito-Lay North America, Inc. ("Frito-Lay") pursuant to 35 U.S.C. § 146 to review a November 29, 2005 Final Decision and Decision on Motions of the United States Patent and Trademark Office ("PTO") in connection with Patent Interference No. 105,173 ("the Interference"). In the December 6, 2006 Joint Status Report submitted to the Court in this matter, ITW indicated (over the objection of Frito-Lay) that one of the issues that it intended to litigate was the patentability of the contested subject matter in the Interference. As explained below, ITW believes that it is entitled to litigate the unpatentability issue because, among other reasons, it presented that issue to the Board for decision in connection with its motion for judgment in the Interference.

## SUMMARY OF ARGUMENT

The Court should deny Frito-Lay's request to bar ITW from litigating the issue of unpatentability of the contested subject matter in this action. Because ITW explicitly requested a decision on the unpatentability issue in the proceedings before the Board of Patent Appeals and Interferences ("the Board") as part of its motion for judgment on priority, ITW may raise that issue in this proceeding under 35 U.S.C. § 146, even though the Board declined to reach the issue. The assertion by Frito-Lay that the Board must actually decide the issue or that ITW must have raised the issue during the "early phase" of the interference for this Court to entertain the issue is not the law. As demonstrated below, the case law (indeed the very cases cited by Frito-Lay) hold that a Board decision on an issue is not a prerequisite to raising that issue in a Section 146 action. Rather, the inquiry is whether a party requested that the unpatentability issue be

2.

resolved by the Board in connection with the decision as to which party is entitled to priority. ITW clearly made such a request in the Interference.

The PTO declared the Interference in December 2003. The inventions of the Interference "counts" were a zippered flexible package containing a food product that is pinch-grip openable, and a method of opening and re-closing a pinch-grip openable package that contains a food product. After the Board decided several preliminary motions, it set forth a schedule for briefing the motions for judgment and required Frito-Lay to file its motion papers by January 25, 2005.[1] It was in this January 2005 filing that Frito-Lay first disclosed the factual basis for its contention that Marc Jurgovan (one of its inventors) had complete conception of the inventions in December 1996. In short, Frito-Lay contended that conception was Mr. Jurgovan's idea of a zipper package that could be opened using a "single pinch-grip opening motion" and then reclosed. The Frito-Lay inventor revealed at his deposition that he arrived at this idea by reversing the consumer and product sides of a storage bag zipper.

Once Frito-Lay disclosed its allegations concerning "conception" of the contested subject matter, ITW argued in its subsequent papers on its own motion (and in opposing Frito-Lay's motion for judgment on priority) that if the Board agreed that Mr. Jurgovan's idea could be conception of the inventions of the counts (which ITW disputed), then the Board should rule that the counts were unpatentable over the prior art. The issues of priority and unpatentability were thus inextricably intertwined.

---

[1]     In an interference proceeding, the practice is to identify the parties by first name of the respective group of inventors. Thus, ITW is the real party in interest corresponding to Ramsey, and Frito-Lay is the real party in interest corresponding to Jurgovan. For the sake of simplicity, ITW will use the real parties in interest, unless it needs to refer to the specific individual inventors.

ITW also submitted various declarations describing the use of a pinch grip method to open zippered packages at a 1996 trade show attended by Frito-Lay representatives, including Mr. Jurgovan, and described the public disclosures of zippered bags where the zipper's consumer and product side were reversed. ITW requested that the Board rule that if Jurgovan's idea was "conception" of the counts, the counts were not patentable over the prior art. The Board clearly had the authority to render a decision on unpatentability as part of its decision on priority (*see* 35 U.S.C. § 135(a); *see also* 37 CFR § 41.104(b)), but did not decide that issue.

For the reasons discussed below, the Board's failure to decide the unpatentability issue does not prevent ITW from raising the issue in this action. Accordingly, the Court should deny Frito-Lay's motion.

<u>STATEMENT OF FACTS</u>

A.     <u>Summary Of The Interference Proceeding</u>

The Interference related to zippered bags (such as the well known "Zip Lok" storage bag) specifically for salty snacks designed to be opened in the manner conventional salty snack bags are opened, i.e. using a "pinch grip method" (by gripping the sides of the bag and pulling). ITW is a leading manufacturer of zipper packaging that is used throughout the world. *See* B80, ¶ 4. Frito-Lay is a leading manufacturer of salty snacks. *See* B41, ¶ 5. The zippers in conventional storage bags (i.e., those designed to be opened by pulling apart the bag walls above the zipper) require a lower opening force to pull apart the zipper when the force is applied from above the zipper (the "consumer side") than from below the zipper (the "product side"). *See* B86-87, ¶ 8. That arrangement permits a consumer to separate the zipper sides to open the storage bag from the top without deforming or tearing the bag, and still permit the zipper to have a strong

enough holding force from inside the bag to prevent a filled bag from inadvertently popping open. *See* B86-87, ¶ 8.

The PTO declared an interference on December 8, 2003 between: (1) Jurgovan's U.S. Patent No. 5,972,396 and U.S. Application No. 09/372,646; and (2) Ramsey's U.S. Application No. 09/481,713. A156. As noted above, the inventions at issue (also known as counts or contested subject matter) were a zippered flexible package containing a food product in which the package is pinch-grip openable, and a method of opening and re-closing a pinch-grip openable package that contains a food product.

Pursuant to a stipulated schedule promulgated by the Board, ITW and Frito-Lay served preliminary statements on each other on July 16, 2004. B2. This date for exchanging preliminary statements was after the deadline for filing all preliminary motions had passed.[2] Frito-Lay's preliminary statement listed January 2, 1997 as the earliest date of its conception of a pinch-grip openable bag and of a method of opening and reclosing a pinch-grip openable bag (i.e., the inventions encompassed by the counts). B5. In that preliminary statement, Frito-Lay did not (and was not required to) describe the underlying allegations for its "conception." Those allegations, which were to be the centerpiece for its assertion that it was entitled to judgment over ITW based on the

---

[2]     In interference proceedings the parties are required to file Preliminary Statements that list the earliest dates for conception and reduction to practice that a party will rely upon for priority and derivation. The dates set forth in a party's Preliminary Statement are by no means a clear indication that the party will rely on those dates to prove priority, and those statements do not describe the factual basis for the alleged conception. The timing of the exchange of Preliminary Statements here meant that they were not reviewed by the opposing party until after the deadline for filing preliminary motions had long expired.

priority of its "invention," were not disclosed until after the preliminary motions had been decided.

Following a decision on preliminary motions, the Administrative Patent Judge issued an "Order Setting Times" listing the remaining deadlines for the interference (B16), and provided that the new interference rules promulgated by the PTO (effective September 13, 2004) would govern the Interference as of November 17 (B12). As a result, 37 CFR § 41 et seq., and not 37 CFR § 1.601 et seq., govern remaining proceedings of the interference after September 13, 2004.

Frito-Lay filed its motion for judgment on January 21, 2005. B17. In that motion, it described the ideas of Mr. Jurgovan that it believed constituted conception, and argued (based on the timing of this idea) that it was the first to conceive and reduce to practice the counts of the Interference. In connection with that filing, Frito-Lay submitted Mr. Jurgovan's Declaration, which described (for the first time) the evidence supposedly substantiating Mr. Jurgovan's conception. Specifically, he asserted that he had conceived the inventions in the "latter part of December 1996," when he thought that Frito-Lay should use a "reclose solution that took advantage of the standard way that consumers opened [its] snack food products, i.e., in a pinch grip motion." B8, ¶ 22. Mr. Jurgovan then went on to describe that his invention consisted of a bag with zipper on both the front and back walls of the bag material below a top seal, that the zipper material and seal could be opened in a "single pinch-grip opening motion," and that the package could be reclosed. B8, ¶ 23.

ITW subsequently filed its motion for judgment on March 25, 2005. A51. In that filing, ITW focused on why its own inventors' activity constituted conception, and

argued that Jurgovan's idea was not sufficiently detailed to be "conception."  ITW noted, however, that if the Board determined that Mr. Jurgovan's idea was conception of the counts, the counts would not be patentable over the prior art.  A28, n.1; A47, n.5.  ITW expressly stated that it would further develop the unpatentability argument in its opposition to Jurgovan's motion, which was filed on May 13, 2005.  A48.  ITW also explained that during a November 1996 trade show, there was a demonstration of opening zippered bags with a pinch-grip method.  A48.  Thus, ITW's motion for judgment raised the issue of unpatentability of Frito-Lay's alleged conception.  ITW also submitted declarations describing in detail the trade show events and disclosure in November 1996.  B81, ¶¶ 7-8; B88-89, ¶¶ 14-16; B101-102, ¶¶ 15-17.

After ITW filed its motion for priority, it cross-examined Mr. Jurgovan by deposition.  During that deposition, Mr. Jurgovan disclosed that his work in December 1996 included some bench tests where he attached the zipper to bag material with the product and consumer sides of the zipper reversed.  B117-119.  ITW also examined Mr. Jurgovan on his attendance at the November 1996 trade show.  B112.  He admitted attending the show, but denied observing any demonstration involving pinch-grip opening.  B112-116.

On May 13, 2005, ITW and Frito-Lay filed their respective oppositions to the motions.  A52, A81.  ITW once again asserted that Mr. Jurgovan's idea in December 1996/January 1997 could not serve as conception, but that to the extent the Board deemed Jurgovan's idea to be "conception" of the inventions, it was not patentable under 35 U.S.C. §§ 102(a) and (b).  A83, A96-99.  In its opposition, Frito-Lay noted that Jurgovan did not actually witness anything regarding pinch-grip opening during the trade show,

and that ITW's evidence did not establish that the packages opened at the trade show met all of the elements of the count (i.e., the claimed invention). A77-78. Thus, Frito-Lay recognized and responded to ITW's argument as to whether Jurgovan's alleged "conception" was patentable, contrary to its current contention that ITW did not raise unpatentability in its motion for judgment.

In their respective reply papers in the Interference, ITW and Frito-Lay both continued to argue their positions regarding ITW's argument on unpatentability based on Frito-Lay's alleged conception. ITW again asserted that all the elements of Frito-Lay's alleged conception were known in the prior art as demonstrated at the November 1996 trade show. A149-150; B120-123, Claim Chart. Likewise, Frito-Lay attempted to rebut ITW's facts and convince the Board that there was no substance to ITW's unpatentability assertions. A125-126.

In addition, ITW stated that reversing the product and consumer sides of the zipper when attaching to the sidewall of bag material (which is what Jurgovan said he had done in December 1996) was such a common error in the industry that there was a patent on an invention to prevent that (typically undesired) orientation of the zipper. B132 n.3; B136-139. Before the oral hearing, ITW explicitly listed whether "Jurgovan's [Frito-Lay's] ideas of December 1996/January 1997 for a pinch grip reclosable package were anticipated under 35 U.S.C. § 102 by a public display of a pinch grip openable reclosable package in November 1996" as one of the issues to be considered by the Board. B142. Thus, the issue of unpatentability was clearly presented to the Board for decision. Ultimately, the Board awarded priority to Frito-Lay, and expressly declined to

decide the issue of unpatentability on the ground that ITW had failed to file a timely

preliminary motion based on this "material" information.  A208, n.10.[3]

B.    The Changes In Regulations Governing Interference
      Proceedings

On August 12, 2004, the U.S. Patent Office, after significant public

comment, issued final rules altering interference practice before the Board.  *See generally*

69 Fed. Reg. 49960 et seq. (August 12, 2004).  The stated purpose of these changes was

to eliminate the complexity of the rules so that parties had less concern with technical

compliance than actually proving their case.  *See* 68 Fed. Reg. 66648, 66657

(November 26, 2003) ("[T]he considerable detail of the current rules has fostered a

tendency toward technical compliance with the rules rather than actually proving a case

(*e.g., Hillman v. Shyamala,* 55 USPQ2d 1220, 1221 (BPAI 2000))").  Although these

changes to the rules are not dispositive of ITW's right to litigate the unpatentability issue

in this action, they do highlight the PTO's desire to have decisions based on the

substantive issues rather than on procedural traps in the previous rules.

Before September 13, 2004, interference practice before the Board was

governed by 37 C.F.R. § 1.601 et seq.  Interference motion practice was primarily

governed by Sections 633 and 637.  Section 633 specified the types of motions that a

party could file, and Section 637 set forth the procedural requirements for such motions.

---

[3]    Frito-Lay did not raise the timeliness issue until its final reply brief, where it
       argued that ITW should have raised the issue during the preliminary motion
       phase.  A125-A126.  ITW was not in a position, however, to make such a motion
       until after it was revealed that Frito-Lay would rely on an extremely general idea
       for its evidence of conception.  *See infra* at 12.

If a party wished to make a motion that was not listed in Section 633, it could make a miscellaneous motion under Section 635.

A key change in the new interference rules was the replacement of motion practice under Section 633 with a simplified motion practice under 37 C.F.R. § 41.121(a)(1), so that the merits of the case could be decided more efficiently:

> Section 41.121(a)(1) redefines motions practice under Rule 633(a), (b), (c)(2), (c)(3), (c)(4), (f) and (g) to focus more specifically on the central issue in the contested case. Section 41.121(a)(1)(iii) permits a motion for judgment in the contest, which can include an attack on standing as well as a motion for relief on the central issue of the contest.

*Id*. at 49967.

The new rules now allow parties to raise only three types of substantive motions.[4]  Thus, what would have been a preliminary motion under 37 C.F.R. § 1.633(a) concerning unpatentability of the other party's claims now is raised as a motion for judgment under the new rules, 37 C.F.R. § 41.121(a)(1)(iii).

## ARGUMENT

I.    THE REQUIREMENTS FOR RAISING AN ISSSUE IN A
      SECTION 146 ACTION

The criteria for presenting an issue in a Section 146 case are both straightforward and met in this case.  In 1984, the Federal Circuit indicated that in an action under 35 U.S.C. § 146, a district court can admit all proffered testimony on an issue that was either (1) raised by the parties during the proceeding below **or** (2) raised by the Board's decision.  *See Case v. CPC Int'l, Inc.*, 730 F.2d 745, 752 (Fed. Cir. 1984)

---

[4]    The three types of motions are:  motions to redefine the scope of the contested case (§ 41.121(a)(1)(i)); motions to change benefit accorded to the claimed subject matter (§ 41.121(a)(1)(ii)); and motions for judgment (§ 41.121(a)(1)(iii)).

("In our view, since an action under 35 U.S.C. § 146 has the hybrid nature of an appeal and a trial de novo, the statute authorizes the district court to accept all proffered testimony on issues raised by the parties during the proceedings below <u>or</u> by the board's decision.") (emphasis added).

Nine years later, in *General Instrument Corp. v. Scientific-Atlanta, Inc.*, 995 F.2d 209 (Fed. Cir. 1993), the Federal Circuit again stated that the "statute [35 U.S.C. § 146] provides for review of the 'decision' of the Board, which presumably encompasses both the decision itself and all issues raised by the Board's decision." In addition, relying on *Case*, the Federal Circuit stated that "the district court is also authorized to accept proffered testimony on issues raised by the parties during the interference proceedings <u>in addition</u> to issues raised by the Board's decision." *Id.* (citing *Case*, 730 F.2d at 745) (emphasis added). As a result, *General Instrument* reaffirms the principle that in § 146 actions, a district court can consider all testimony on an issue not decided by the Board as long as one of the parties clearly placed the issue before the Board and requested a decision on that issue.[5]

---

[5]     Although the Federal Circuit affirmed the district court's refusal to admit evidence on unpatentability, it was only because at that time the Board of Patent Interferences did <u>not</u> have statutory jurisdiction to decide issues of patentability. See *Case*, 730 F.2d at 748 ("The board held that its jurisdiction did not extend to [patentability], and we are entirely in agreement. In an interference, the issue is priority of invention. 35 U.S.C. § 135. Only that issue and issues ancillary [to priority] are within the jurisdiction of the Board of Patent Interferences.") (citation omitted). That law has changed, however, and the Board may now decide issues of unpatentability raised by a party in an interference proceeding. *See* 35 U.S.C. § 135(a) ("The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability.").

The Federal Circuit came to the same conclusion in *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) ("Section 146 authorizes the district court on review to accept new testimony, but normally as to issues raised by the parties during the proceeding below <u>or</u> by the Board's decision.") (citation omitted and emphasis added). *Conservolite* also reaffirmed that lack of compliance with the technical and complex interference rules does <u>not</u> prevent an issue from being sufficiently raised for § 146 purposes "if the record clearly demonstrates that it was placed before the examiner-in-chief [Administrative Patent Judge] and one or more parties insisted that the issue be resolved in the interference." *Id*. at 1102 (citing *General Instrument,* 995 F.2d at 214). In light of those repeated statements by the Federal Circuit in *General Instrument* and *Conservolite,* there is no merit to Frito-Lay's argument that Section 146 is "interpreted narrowly," or limits review to matters properly raised and decided by the Board.[6]

       ITW complied fully with the governing interference rules.  However, even if ITW had failed to comply with the interference rules, that does not prevent the unpatentability issue from being raised in this Section 146 action because the record in this case "clearly demonstrates that the issue "was placed before the examiner-in-chief

---

[6]      Although in both cases the Federal Circuit affirmed the lower court's decision, the rationale for both rulings was that neither party sought to have the Board decide the issue.  *See General Instrument,* 995 F.2d at 213, 214 (finding that the party now requesting additional testimony on public use did not pursue the public use issue in the interference and, for example failed to cross-exam Scientific-Atlanta's witnesses on public use when the opportunity arose); *Conservolite,* 21 F.3d at 1102 (error to allow additional testimony on an issue that was clearly not raised by either of the parties in the interference proceeding or by the Board's decision).

[Administrative Patent Judge]," and that ITW insisted that the issue be resolved in the process of deciding which of the parties was entitled to priority. *See id.* at 214.[7]

## II.     ITW RAISED THE ISSUE OF UNPATENTABILITY TO THE BOARD AND REQUESTED A DECISION ON THAT ISSUE

The record demonstrates unequivocally that promptly after ITW learned of the facts concerning Mr. Jurgovan's alleged conception, it submitted facts and raised arguments on the question of unpatentability, and requested a resolution of the unpatentability issue by the Board.  Contrary to Frito-Lay's assertion, the issues of priority and patentability in the interference proceeding below were inextricably intertwined.  ITW and Frito-Lay had two conflicting interpretations of what would constitute conception of the inventions, which were critical to the determination of priority.  Once Frito-Lay disclosed its evidence for conception, ITW diligently raised the issue of Mr. Jurgovan's idea embodied in that "conception" as being unpatentable over the prior art, which included the public display in November 1996 of a pinch grip

---

[7]     Frito-Lay's reliance on regional circuit case law is also erroneous for several reasons.  First, regional circuit case law that pre-dates *Case* is entitled to little or no weight.  *See Case*, 730 F.2d at 752 ("The provision of 35 U.S.C. § 146 which provides for review of the Board of Interferences by civil action in a district court explicitly states that the administrative record may be admitted 'without prejudice to the right of the parties to take further testimony.' We are aware that this provision has received varying interpretations in the circuits.") (citation omitted).  Second, cases that do not rely on either *Case*, *General Instrument* or *Conservolite* are entitled to little or no weight.

opening zipper bag and the phenomenon known in the industry of a zipper being reversed on bag film and thereby being attached upside down.[8]

ITW had a different view of what constituted conception of the inventions that would preserve patentability over the prior art. The record clearly shows that, contrary to Frito-Lay's argument, ITW did not simply raise this issue "in passing." Rather, ITW raised it directly and expressly as part of its motion for judgment, and ITW asked the Board to make a ruling on patentability if the Board agreed with Frito-Lay that Jurgovan's idea was conception.

In connection with its motion for judgment, ITW submitted substantial declarations from three witnesses concerning the 1996 trade show and the public display of opening a package using a pinch-grip opening method. B81, ¶¶ 7-8; B88-89, ¶¶ 14-16; B101-102, ¶¶ 15-17. ITW cross-examined Mr. Jurgovan about his attendance at that show, and whether he witnessed the demonstration described in ITW's papers. B112-116. In its March 25, 2005 moving brief, ITW discussed the trade show and noted that if the Board accepted Jurgovan's contention that he first conceived the inventions, then he is not entitled to priority because of the November 1996 trade show demonstration. A28, n.1; A47, n.5. ITW also indicated that it would address that point more fully in its opposition.

In its opposition (filed after Jurgovan gave his deposition), ITW expounded on its argument that if the Board were to agree that Jurgovan's idea

---

[8]     ITW and Frito-Lay had identical claims corresponding to the counts because ITW had copied Frito-Lay's claims to provoke the interference. Thus, if Frito-Lay's interpretation of the counts was accepted by the Board, neither party would be entitled to an award of priority.

constituted "conception," it was unpatentable under Section 102 in light of the November 1996 trade show demonstration. A83, A96-98.[9] In its reply brief, ITW responded to Frito-Lay's attempt to rebut the unpatentability issue. A149-150. In connection with its reply papers, ITW submitted additional support, including a chart, for its argument that if Jurgovan's idea was conception, then all elements of the idea were in public use and thus unpatentable. B120-123; B132, n.3; B136-139.

Finally, ITW specifically asked the Board to resolve the issue of unpatentability. Indeed, the issue of unpatentability is explicitly listed in ITW's list of issues to be considered by the Board. B142. ITW clearly placed the issue of unpatentability before the Board as part of its motion for judgment under 37 C.F.R. § 41.121(a)(1)(iii) and expressly requested that the Board decide that issue in connection with its decision on unpatentability. Thus, ITW asked the Board to resolve the issue as required by the Federal Circuit in *General Instrument* and *Conservolite*.

III.    EVEN IF THIS COURT WERE TO DECIDE THAT ITW
        DID NOT REQUEST THAT THE UNPATENTABILITY
        ISSUE BE DECIDED BY THE BOARD, IT SHOULD
        EXERCISE ITS DISCRETION AND ALLOW THIS
        ISSUE TO BE LITIGATED IN THIS ACTION

This Court should exercise its discretion and permit the unpatentability issue to be litigated in this action. A district court has the equitable discretion to admit evidence on an issue in a Section 146 action, even if that issue was not presented to the

---

[9]    Frito-Lay's suggestion that the "contingent" nature of ITW's unpatentability argument somehow deprives it of the right to raise it in this action is misplaced. Frito-Lay does not offer a shred of support for the notion that ITW had to concede the contingency (whether the Board would treat Jurgovan's idea as conception) in order to preserve the unpatentability argument, which is the logical outcome of this argument.

Board for decision or decided by the Board. *See Conservolite*, 21 F.3d at 1102 ("Under appropriate circumstances, a district court may exercise its discretion and admit testimony on issues even though they were not raised before the Board."). Examples of appropriate circumstances include "an intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving a response or further elaboration." *Id*. Those circumstances are clearly present in this case.

First, as noted above, the change in the rules during the interference clearly sought to eliminate the type of outcome advocated by Frito-Lay in this motion, which seeks to exalt the procedure over a decision on the merits. Thus, the change in the rules counsels in favor of permitting ITW to raise the unpatentability issue. A denial of the right of ITW to raise the issue would run counter to the expressed goal of the PTO in issuing these new rules.

The Board clearly stated that the new interference rules (37 C.F.R. § 41 et seq.) would govern the remainder of the Interference proceeding. One change in the rules was that Preliminary Motions under 37 C.F.R. § 1.633 were no longer available to the parties. Thus, in arguing that ITW should have filed a motion on unpatentability upon learning of Jurgovan's idea constituting the alleged conception, Frito-Lay suggests a motion that was no longer available under the rules of the interference. ITW properly raised the issue of unpatentability in its motion for judgment (and in opposition to Frito-Lay's motion for judgment) under 37 C.F.R. § 41.121(a)(1)(iii) in a timely fashion after ITW became aware of Frito-Lay's evidence of "conception." In any event, the intervening change in the interference rules and the express purpose of those rules to

favor a decision on the merits are factors in favor of permitting ITW to litigate the unpatentability issue in this case.

Another circumstance weighing in favor of permitting ITW to raise the issue is the fact that Frito-Lay did not disclose the idea constituting conception until it filed its motion for judgment in January 2005, long after the deadline for Preliminary Motions had passed. That fact undercuts Frito-Lay's suggestion that ITW should have raised the unpatentability issue based on 35 U.S.C. §§ 102(a) and (b) during the preliminary motion phase (D.I. 16 at 6), and demonstrates that it was a new issue that did not come into focus until after Frito-Lay submitted Mr. Jurgovan's statements about conception. Frito-Lay's contention that ITW knew about the 1996 trade show and the patent disclosing reversing a zipper is a red herring because those facts did not develop evidentiary significance until Mr. Jurgovan claimed that his conception was nothing more than the idea of a zipper bag that could be opened with a pinch grip method. There was simply no basis for ITW to understand the facts underlying Mr. Jurgovan's alleged conception until late January 2005.

The Court should exercise its discretion to allow ITW to litigate the issue of unpatentability and permit ITW to offer evidence concerning the unpatentability of the inventions, given Frito-Lay's position concerning conception. In trying to restrict the evidence that ITW may present, Frito-Lay tries, mistakenly, to equate the equitable remedy of a review and trial de novo under 35 U.S.C. § 146 with scope of review of the administrative record by the Federal Circuit pursuant to 35 U.S.C. § 141. However, a district court review under 35 U.S.C. § 146 is broader in scope than Federal Circuit review under 35 U.S.C. § 141 because the district court can admit additional testimony.

*See Conservolite*, 21 F.3d at 1102 ("Section 146 authorizes the district court on review to accept new testimony, but normally only as to issues raised by the parties during the proceedings below or by the Board's decision.") (citation omitted).

There is, moreover, no prejudice to Frito-Lay in permitting this issue to be litigated in this action. It has already litigated the issue in the interference proceeding (notwithstanding the Board's decision to decline to decide the issue), and is fully capable of responding to whatever additional evidence ITW marshals concerning the trade show and the fact that the consumer and product side of the zipper were inverted on packages well before Mr. Jurgovan's alleged conception.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Frito-Lay's request to bar ITW from litigating the issue of unpatentability or submitting evidence concerning the patentability of Frito-Lay's claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com

*Attorneys for Plaintiff Illinois Tool Works Inc.*

18.

OF COUNSEL:

DAY PITNEY LLP
Gerald Levy
Richard H. Brown
7 Times Square, 20th Floor
New York, NY 10036
(212) 297-5800

February 15, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Rodger D. Smith, hereby certify that on February 15th, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor LLP

I also certify that copies were caused to be served on February 15th, 2007, upon the following in the manner indicated:

<u>BY EMAIL AND HAND</u>

John W. Shaw, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
jshaw@ycst.com

<u>BY EMAIL</u>

Joseph A. Hynds, Esquire
Glenn E. Karta, Esquire
Rothwell, Figg, Ernst & Manbeck, P.C.
1423 K Street, N.W., Suite 800
Washington, DC  20005
jhynds@rfem.com
gkarta@rfem.com

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell LLP
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com