## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ILLINOIS TOOL WORKS INC.,     )
                                        )
             Plaintiff,      )
                                          )
    v.                      )    Civil Action No. 06-054-GMS
                                          )
                                          )
FRITO-LAY NORTH AMERICA, INC, f/k/a )
RECOT, INC.,                         )
                                          )
             Defendant.     )

**REPLY BRIEF IN SUPPORT OF REQUEST BY FRITO-LAY NORTH AMERICA, INC. THAT THE COURT DETERMINE THAT THE ISSUE OF UNPATENTABILITY OF THE CONTESTED SUBJECT MATTER MAY NOT BE LITIGATED IN THIS ACTION UNDER 35 U.S.C. § 146**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (ID# 3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
Telephone:  (302) 571 6600

*Of Counsel:*

Joseph A. Hynds
Glenn E. Karta
Lisa N. Phillips
ROTHWELL, FIGG, ERNST
  & MANBECK
1425 K Street NW, Suite 800
Washington, DC 20005
Telephone:  (202)-783-6040

February 23, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

SUMMARY OF THE ARGUMENT ........................................................................ 1

ARGUMENT ........................................................................................................ 2

    A.   The Cases Cited By ITW Do Not Support Its Contentions ................................... 2

    B.   ITW Could Have, and Should Have, Raised Unpatentability During The Preliminary Motions Phase Below ........................................................................ 4

    C.   ITW Did Not Properly Raise Unpatentability Under the New Rules .................... 6

    D.   The Court Should Not Exercise Its Discretion to Decide the Patentability Issue ... 8

CONCLUSION ................................................................................................... 12

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Atofina v. Great Lakes Chem. Corp.*,
   441 F.3d 991 (Fed. Cir. 2006).................................................................. 4

*Bio-Technology General Corp. v. Novo Nordisk A/S*,
   No. 02-235, 2004 U.S. Dist. LEXIS 14959, (D. Del. August 3, 2004) .................................. 10

*Case v. CPC Int'l, Inc.*,
   730 F.2d 745 (Fed. Cir.),
   *cert. denied*, 469 U.S. 872 (1984)........................................................... 3, 4

*Conservolite, Inc. v. Widmayer*,
   21 F.3d 1098 (Fed. Cir. 1994),
   *cert. denied*, 513 U.S. 1016 (1994)...................................................... 3, 4, 8, 11

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   469 F.3d 1005, 1013 (Fed. Cir. 2006)....................................................... 5

*General Instr. Corp., Inc. v. Scientific-Atlanta, Inc.*,
   995 F.2d 209 (Fed. Cir. 1993)............................................................ 3, 4

*Rexam Indus. Corp. v. Eastman Kodak Co.*,
   182 F.3d 1366, 1370 (Fed. Cir. 1999)...................................................... 10

*Rowe v. Dror*,
   112 F.3d 473 (Fed. Cir. 1997)............................................................ 5

**FEDERAL STATUTES**

35 U.S.C. § 146............................................................................ 1, 2, 3, 10

35 USC § 102.............................................................................. 4

37 C.F.R. §§ 41.121(a)(iii)................................................................. 4, 9

37 CFR § 1.633........................................................................... 5

37 CFR § 41.4 (b) ........................................................................ 4, 9

Defendant, Frito-Lay North America, Inc. ("Frito-Lay" or "Defendant"), hereby respectfully submits its reply brief in further support of its request that the Court determine that the issue of patentability of the contested subject matter may not properly be litigated in this action under 35 U.S.C. § 146.

## SUMMARY OF THE ARGUMENT

ITW advances nothing that justifies consideration of the improperly raised issue of patentability, and largely ignores much of Frito-Lay's showing in its opening brief. No case cited by ITW actually granted the relief it now seeks, which would make a shambles of orderly interference practice and procedure. ITW had two opportunities to raise properly the unpatentability issue in the interference below. The first time, during the preliminary motions phase, it did nothing. The second time, during the priority phase, it chose to ignore the rules and attempted to raise the issue in a manner that it must have known would not have been, and in fact was not, successful. Under the controlling case law, ITW simply did not raise the alleged unpatentability issue in the interference in a manner that would require the Court to hear the issue now in this action under 35 U.S.C. § 146.

ITW's alleged excuse for not properly raising unpatentability below, *i.e.* that it was not in a position to do so until after it saw Frito-Lay's priority evidence, is unfounded. An invalidity analysis involves a comparison between Frito-Lay's claims corresponding to the count with the alleged prior art; evidence of Frito-Lay's priority case is irrelevant to that inquiry. ITW's lack of knowledge of Frito-Lay's priority proofs therefore cannot excuse ITW's failure to properly raise the alleged unpatentability issue. Moreover, ITW's claim that they could not have filed a motion for unpatentability under the new interference rules after receiving Frito-Lay's priority evidence

is manifestly incorrect.  *See* Section C below.  ITW could have attempted to file such a motion, but failed to do so.

ITW's equitable pleas also miss the mark, and the Court should not exercise its discretion to hear the unpatentability issue.  There was no intervening change in the law to justify the relief sought by ITW.  To the contrary, the 2004 changes to the interference rules occurred *after* ITW should have raised the alleged unpatentability issue in a preliminary motion, and *before* ITW improperly attempted to raise the issue during the priority phase of the interference.  In any event, the rule changes did not affect any substantive patentability standards.  Moreover, because ITW did not attempt to comply with the new procedural rules, it cannot now be heard to complain that the Board did not decide the improperly raised issue.

Finally, both the Court and Frito-Lay would suffer disadvantage if ITW were permitted to litigate unpatentability in this action.  The advantage of having the benefit of the Board's scientific expertise on the complex issue of patentability would be lost, particularly in view of ITW's attempt to expand the unpatentability issue far beyond anything it alleges that it tried to raise below.  Frito-Lay's motion should be granted.

## ARGUMENT

### A.     The Cases Cited By ITW Do Not Support Its Contentions

ITW does not dispute that the issue of patentability was not decided by the Board, or that the Board specifically declined to make a ruling on unpatentability because the issue was not properly raised by ITW below.  Instead, ITW argues that the proper legal standard for Section 146 review is whether ITW requested a decision on the issue, yet it cites no case in which that standard was actually applied to justify litigating an issue not decided by, or properly raised

2

before, the Board.  ITW relies primarily on three Federal Circuit cases, yet the results of those cases do not support ITW's position.

In *Case v. CPC Int'l, Inc.*, 730 F.2d 745 (Fed. Cir.), *cert. denied*, 469 U.S. 872 (1984), the court found no error in the acceptance of additional testimony of a Dr. Parmerter (not presented to the Board) by the district court on the issue of whether there was an interference-in-fact between the Case patent and the CPC application.  However, that additional testimony was presented on an issue that was properly raised *and* decided during the interference.[1]  In *General Instr. Corp., Inc. v. Scientific-Atlanta, Inc.*, 995 F.2d 209 (Fed. Cir. 1993) (discussed at pages 11-14 of Frito-Lay's opening brief) (D.I. 16) the court upheld the lower court's refusal to admit evidence on the new issue of patentability.  Finally, in *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098 (Fed. Cir. 1994), *cert. denied*, 513 U.S. 1016 (1994) (discussed at page 10 of Frito-Lay's opening brief), the court reversed the district court's judgment of priority because the lower court rested its decision on a ground not properly before it.

Thus, ITW points to no case in which a party was permitted to raise an issue before the district court under the circumstances present in this case.  That is no surprise, because the standard advanced by ITW is so loose as to make a mockery of interference procedure and practice.  Under that standard, a party could "raise" virtually any issue, at the most inappropriate time and in derogation of Board Rules and Orders, simply by mentioning it somewhere and requesting resolution.  But that would turn 35 USC § 146 on its head, because the statute vests

---

[1]     The Federal Circuit decision does not recite the substance or purpose of the Parmerter testimony.  However, it is apparent from the district court decision that the testimony related to an issue actually decided during the interference.  *Case v. CPC Int'l, Inc.*, 1983 U.S. Dist. LEXIS 18256, at *4, *9-*10 (D. Mass. 1983).

the courts with jurisdiction to review "the decision" of the Board. The cases cited by ITW provide no reason for the Court to decide the patentability issue.[2]

As set forth in Frito-Lay's opening brief, ITW failed to properly raise the alleged invalidity issue under even under the broad dicta in *General Instrument*. *See* D.I. 16, pages 11-13. In short, ITW's arguments regarding the Pac Expo demonstration were nothing more than *contingent* positions that ITW knew full well would not be – and were not – considered by the Board without requesting the Board's permission to raise the issue in a motion for judgment under 37 C.F.R. §§ 41.121(a)(iii) and 41.4(a) and (b).

### B.    ITW Could Have, and Should Have, Raised Unpatentability During The Preliminary Motions Phase Below

ITW attempts to justify its failure to raise properly the alleged unpatentability issue by arguing that the grounds for the motion were not known to it until well after the deadline for filing preliminary motions had passed, namely, not until it saw Frito-Lay's priority proofs in January 2005. That argument is unfounded as a matter of law.

In urging that it was unaware of the grounds of unpatentability until it saw Frito-Lay's priority proofs, ITW is attempting to confuse two distinct concepts, *i.e.*, Frito-Lay's patent claims corresponding to the count, and Frito-Lay's proof of priority with respect to the count. It is fundamental patent law that one seeking to invalidate a patent claim under 35 USC § 102 must show that each element of the claim was present in a single piece of prior art. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006). Claims are to be construed in light of the specification of which they are a part, and the prosecution history. *Depuy Spine, Inc. v.*

---

[2]    At footnote 7 in its brief, ITW criticizes Frito-Lay's reliance on "regional circuit case law." That criticism is both puzzling and entitled to no weight. The alleged offending cases are not specified, and virtually all of the cases upon which Frito-Lay relies either cite or were decided subsequent to *Case*, *General Instrument* or *Conservolite*.

*Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006). On the other hand, Frito-Lay's priority evidence is just that—it is proof of what it did, and when it did it, with respect to each element of the count. Thus, for ITW to speak of the patentability of a "conception" is nonsensical. Conceptions are not patentable; claims are.

Ever since the law was changed in 1984 to allow the Board to consider questions of patentability in interferences, the PTO has required parties to raise that issue first, during what was formerly known as the preliminary motion phase.[3] The reason for that is rooted in common sense and administrative efficiency—if a party's claims are unpatentable, they cannot be involved in an interference, and there is no need to determine the ultimate issue of priority. For at least the past 22 years, interference parties have been required to file motions for unpatentability without having seen an opponent's priority proofs, simply because such proofs are irrelevant to a comparison of the prior art to the opponent's patent claims which correspond to the count.

The Federal Circuit decision in *Rowe v. Dror*, 112 F.3d 473 (Fed. Cir. 1997), illustrates the point. *Rowe* was a direct appeal to the Federal Circuit from a final decision of the Board in an interference. Before the Board, Dror filed a preliminary motion alleging that Rowe's claims corresponding to the count were unpatentable as anticipated by the prior art patent to Lemelson. The Board found that the Lemelson patent anticipated the involved claims of both parties, and entered judgment accordingly without an award of priority. On appeal, the Federal Circuit recited the familiar standards that prior art anticipates a claim "only if the reference discloses, either expressly or inherently, every limitation of the claim," (*id.* at 478) and that the claims are

---

[3]    *See* former 37 CFR § 1.633: "A party may file the following preliminary motions: (a) A motion for judgment on the ground that an opponent's claim corresponding to a count is not patentable to the opponent."

to be interpreted in light of the specification (*id.* at 479). Notably, the court had no difficulty deciding patentability absent Rowe's priority proofs; they were irrelevant to the issue. Thus, ITW's argument that the issues of patentability and priority are "inextricably intertwined" (Opposition at 12) is incorrect.

ITW's argument that it could not have brought the alleged unpatentability motion at the proper time is simply not true. ITW had all of the information that it needed regarding the scope of the Frito-Lay claims when the preliminary motions were originally due. Indeed, because ITW copied the claims from Frito-Lay's issued patent into its application in order to provoke the interference in the first place (as it admits on page 13, n.8), ITW was well aware of the content and scope of those claims.

ITW's conduct reflects a failed interference strategy. ITW thought it was going to win the interference on the issue of priority. When ITW actually saw Frito-Lay's priority evidence — which established a date of invention *months* before ITW's earliest possible date of invention — ITW decided to come up with a Plan B; namely, to advance a *contingent* invalidity theory that would render the subject matter of the interference unpatentable to both parties. However, ITW's Plan B effort to interject invalidity plainly violated the interference rules and had no chance to be considered by the Board – which it was not. ITW should not be allowed to profit from its failed strategy.

### C.    ITW Did Not Properly Raise Unpatentability Under the New Rules

ITW argues that because it raised the unpatentability argument in a motion for judgment on priority, the issue was properly raised under the new interference rules. *See* Opposition at 14 and 15. That is manifestly incorrect. A bit of history is instructive.

After the Board decided the parties' preliminary motions on November 17, 2004, it observed that "it is time to commence the priority phase of the interference," and it issued the briefing schedule governing the filing of motions on priority and the priority records. C33-C37.[4] It was only during that briefing on priority (the issue of who invented first), that ITW advanced its unrelated and contingent unpatentability theory. ITW does not even have a colorable argument that it was authorized under the new rules to raise a new invalidity theory at that time.

First, the new rules provide that substantive motions "may only be filed according to a schedule the Board sets." 37 CFR § 41.123(a). ITW does not, and cannot, point to any schedule set by the Board allowing the filing of a motion based on unpatentability. To the contrary, the only schedule issued by the Board during the relevant time period is embodied in the November 17, 2004 Order, which permitted only priority motions. C33-C37.

Second, in addition to the PTO rules governing interference practice, the Board has further promulgated a Standing Order governing interference procedure. C1-C32. The September 13, 2004 Standing Order was in effect in early-2005 when ITW allegedly discovered the ground of unpatentability. C21, C33. Section 26 of the Standing Order provided, in pertinent part, that no "substantive motions may be filed without prior Board authorization obtained during a conference call." C20. ITW never asked for approval to file an unpatentability motion, in a conference call or otherwise, and was never granted such approval. Thus, presenting its contingent unpatentability theory as it did, without prior Board approval, violated both the new rules and the applicable Standing Order. Not surprisingly, the Board saw

---

[4]     "C___" references are to the Appendix accompanying this Reply Brief.

it this way and expressly refused to consider the issue. A208, n.9.[5]  ITW should not now be

permitted to benefit from its flouting of the Board's procedures and Orders.

ITW in its Opposition repeatedly refers to the fact that regulations governing

interferences were changed in 2004, and states that a purpose of these changes was to eliminate

the complexity of the rules so that parties had less concern with technical compliance than

actually proving their case. *See e.g.,* Opposition at 8 and 15.  In so doing, ITW appears to

suggest that their clear failure to comply with the interference rules is a mere technicality that

should be overlooked.  Nowhere in the new rules themselves, or as applied by the Board, is there

any suggestion that a party may disregard the procedures for properly raising issues for

consideration before the Board in an interference.  Indeed, the Board in the interference below,

applying the new rules, expressly refused to consider ITW's contingent invalidity theory.

### D.    The Court Should Not Exercise Its Discretion to Decide the Patentability Issue

ITW argues that even if it did not properly raise the patentability issue below, the Court

should nevertheless exercise its discretion to allow the issue to be litigated.  However, none of

the reasons it advances compels that result.  To the contrary, ITW's failure to follow the rules

below, and its misleading arguments to the Court now, militate against the relief it seeks.

Citing *Conservolite*, ITW argues that there was an "intervening change in the law" (*i.e.,*

the change in the interference rules) which merits the Court hearing the issue.  ITW is wrong for

several reasons.  First, ITW should have timely raised their alleged invalidity theory in a

preliminary motion under the old rules – as the Board properly found in deciding not to consider

the issue.  Second, even if the Court were to credit ITW's argument that it appreciated the

invalidity theory only after seeing Frito-Lay's priority evidence – which it should not – there was

---

[5]       "A___" references are to the Appendix accompanying the Opening Brief.

no "intervening" change in the law that precluded ITW from properly raising the issue before the Board. The new rules came into effect not *after* the Board's decision, but *before* ITW allegedly raised the unpatentability issue. Indeed, at pages 14-15 of its brief (D.I. 18), ITW *attempts to show how it properly raised the issue under the new rules*. ITW cannot argue on the one hand that it properly raised the issue under the new rules, and then, on the other hand, argue that the issue can now be raised because of the change in the rules.

Moreover, the new rules did not preclude ITW from properly raising the alleged invalidity issue in a belated motion for judgment under 37 C.F.R. § 41.121(a)(iii). However, this would have required ITW to request the Board's permission to file that motion and, in addition, make a showing of good cause, excusable neglect, or that consideration of the issue would be in the interest of justice. 37 CFR § 41.4(a) and (b). Frito-Lay does not concede that ITW could have made those substantive showings before the Board. Indeed, Frito-Lay believes that because of ITW's delay, and in view of the fact that ITW possessed the alleged prior use information since 1996, the Board would have rejected any such request by ITW. However, the point is that ITW did not even try to comply with the new rules. Finally, the change in the interference rules did not affect the substance of ITW's argument, *i.e.*, the patentability standards under the new rules are the same as under the old rules, and ITW has not contended otherwise. Under the circumstances, the equities disfavor ITW.

In further support of its discretion argument, ITW again alleges that Frito-Lay did not disclose its conception evidence until January 2005. However, for the reasons advanced in Section B above, that argument is legally incorrect and provides no reason for the Court to exercise its discretion to decide patentability.

ITW also argues that Frito-Lay would not be prejudiced if the Court were to allow the patentability argument to be raised. *See* Opposition at 17. To the contrary, Frito-Lay would be greatly prejudiced for several reasons. First, Frito-Lay in particular, and litigants generally, are entitled to rely on the uniform application of the interference rules and procedures; anything less would cause great uncertainty. Next, the interplay of the interference rules and 35 USC § 146 is supposed to insure that the complex scientific and legal issues presented by interferences generally, and questions of patentability in particular, should in the first instance be decided by the PTO Board, which is the administrative agency charged with determining such matters on a day-to-day basis. When that is ignored, both the court and litigants are disadvantaged. Indeed, courts have observed that "the district court should review the issues of priority and patentability after the Board's *full* consideration." *Bio-Technology General Corp. v. Novo Nordisk A/S*, No. 02-235, 2004 U.S. Dist. LEXIS 14959, at *115 (D. Del. August 3, 2004) (citing *Rexam Indus. Corp. v. Eastman Kodak Co.*, 182 F.3d 1366, 1370 (Fed. Cir. 1999)).[6]

ITW further contends that Frito-Lay would not be prejudiced because even though the Board did not decide patentability, Frito-Lay already litigated the issue below. Opposition at 17. That is demonstrably false. To the contrary, because it was improperly raised, Frito-Lay did not fully litigate the patentability argument—it merely pointed out that the issue could not be raised during the priority phase of the interference, and argued that the scant evidence that ITW chose to present was facially inadequate. Further, and perhaps more importantly, *there was no litigation at all of the full scope of the patentability argument that ITW now seeks to make.* As explained in Frito-Lay's opening brief (D.I. 16 at 17), at best, ITW raised below one isolated

---

[6]    Frito-Lay's opening brief contained extensive analysis of the advantages to courts of having the Board first decide matters subject to review in § 146 actions (pages 16-17). ITW presents no response to that analysis, or the cases cited therein.

alleged prior public use (the alleged November 1996 PAC Expo demonstration) —which Frito-Lay vehemently denies occurred. Now, however, in both the Complaint (D.I. 1 at 4, Prayer E) and the Joint Status Report (D.I. 11 at 2), ITW alleges unpatentability generally, not limited to the alleged Pac Expo disclosure. And in discussions with Frito-Lay counsel, ITW has raised unpatentability based on ITW's alleged prior sale of the invention, as well as in view of U.S. Patent 5,638,587. It is improper for ITW to argue that the unpatentability argument was already litigated, while not telling the Court (and not contesting Frito-Lay's showing) that ITW plans to expand that defense far beyond what it told the Board. ITW should not be permitted to do so.

Finally, the *Conservolite* case, upon which ITW relies, discusses several factors that the Court should take into account when considering whether to exercise its discretion to allow an issue to be litigated, including: (1) whether the evidence was then reasonably available; (2) whether there was suppression, bad faith or gross negligence in failing to raise the issue; and (3) whether there was due diligence in identifying and procuring evidence. 21 F.3d at 1102. ITW does not deny that the evidence supporting its alleged unpatentability theory was available to it in November 1996. Under the circumstances, ITW was not diligent, and *Conservolite* does not compel the Court to hear the invalidity issue.

11

## CONCLUSION

For the foregoing reasons, Frito-Lay respectfully requests that the Court determine that the patentability of the Frito-Lay claims is not at issue in the present case. ITW should be precluded from advancing any evidence or argument on that issue.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

February 23, 2007

_(signature)_

John W. Shaw (ID# 3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
Telephone: (302) 571 6600
  *Attorneys for Defendant*
  *Frito-Lay North America, Inc.*

*Of Counsel:*

Joseph A. Hynds
Glenn E. Karta
Lisa N. Phillips
ROTHWELL, FIGG, ERNST
  & MANBECK
1425 K Street NW, Suite 800
Washington, DC 20005
Telephone: (202)-783-6040

1382011_1

12

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on February 23, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Rodger D. Smith, III, Esquire
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 N. Market Street
> Wilmington, DE 19801
> rsmith@mnat.com

I further certify that I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### *By E-mail and FedEx*
>
> Gerald Levy, Esquire
> PITNEY HARDIN LLP
> 7 Times Square, 20th Floor
> New York, NY 10036-7311
> glevy@pitneyhardin.com
>
> Richard H. Brown, III, Esquire
> PITNEY HARDIN LLP
> P.O. Box 1945
> Morristown, New Jersey 07962-1945
> rbrown@pitneyhardin.com

> YOUNG CONAWAY STARGATT & TAYLOR LLP

February 23, 2007

> /s/ *Karen L. Pascale*
> Karen L. Pascale (No. 2903) [kpascale@ycst.com]
> The Brandywine Building
> 1000 West St., 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> Phone: 302-571-6600
>   *Attorneys for Defendant,*
>   *Frito-Lay North America, Inc.*