IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ILLINOIS TOOL WORKS INC., | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| FRITO-LAY NORTH AMERICA, INC., f/k/a RECOT, INC., | ) ) ) |
| Defendant. | ) ) ) |

C.A. No. 06-54 GMS

**MEMORANDUM**

**I.    INTRODUCTION**

On January 27, 2006, Illinois Tool Works Inc. ("ITW") filed this action against Frito-Lay North America, Inc. ("Frito-Lay"). This case arises from an interference proceeding before the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office ("PTO"), which was held to determine whether ITW or Frito-Lay was the first to invent in the United States a resealable, flexible food package that is openable via a "pinch-grip" motion. In its complaint, ITW asks the court to determine, pursuant to 35 U.S.C. § 146,[1] whether several rulings by the Board in the interference action were erroneous.

The issue presently before the court is whether ITW should be precluded from raising the issue of patentability with respect to the Jurgoven patent, which is assigned to Frito-Lay, in this action. For the reasons stated below, the court will grant in part and deny in part Frito-Lay's request to preclude patentability issues from this action. The court will deny the motion with respect to the

---

[1] 35 U.S.C. § 146 reads in relevant part: "Any party to an interference dissatisfied with the decision of the Board . . . may have remedy by civil action . . . ."

Section 102(a) and (b) challenges by ITW based on the alleged demonstration of the technology at issue during the November 1996 Pac Expo. The court will grant the motion in all other respects.

## II.     BACKGROUND

### A.     The Interference Action

On December 8, 2003, the PTO declared an interference (Interference No. 105,173)[2] between a patent issued to Jurgoven and assigned to Recot, Inc. (now Frito-Lay), an application submitted by Jurgoven, and an application submitted by Ramsey.[3] An interference is a proceeding initiated in the PTO whereby two or more parties, having independently made the same invention in approximately the same time period, seek a determination as to which party has priority of invention. The party with priority of invention is the one who is determined to have made the invention first, and thus, is entitled to the patent on that invention.

The interference was declared with two counts, Count 1 and Count 2. The subject matter of both Counts relates to a zippered flexible food product package that is pinch-grip openable, and a method of opening and re-closing the pinch-grip food product package.[4]

During the PTO interference, the parties conducted extensive discovery, including taking

---

[2] Interference proceedings are held pursuant to 35 U.S.C. § 135(a), which reads in relevant part: "Whenever an application is made for a patent which . . . would interfere with any pending application, or with any unexpired patent, an interference may be declared . . . . The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability." *Id.*

[3] Frito-Lay is the real party in interest to the Jurgoven patent and application, and ITW is the real party in interest to the Ramsey application. Accordingly, the court will refer to the parties as Jurgoven or Frito-Lay, and ITW or Ramsey.

[4] The technology established by this invention is not at issue in the motion before the court and, therefore, does not need to be described further.

depositions, and submitted formal motions and briefs concerning the priority dispute to the Board. On August 10, 2005, the Board held a final hearing on the interference. The Board issued a written opinion on November 29, 2005.

In its November 29th opinion, the Board entered judgment in favor of Frito-Lay, thus, awarding it priority of invention. In rendering its decision, the Board found that Frito-Lay was entitled to priority, having proven by a preponderance of the evidence that ITW had derived its invention from the Jurgoven patent. The Board also declined to make any ruling on the patentability of the claims in the Counts, because ITW did not file a timely preliminary motion on the issue.

With this factual and procedural background in mind, the court will address the substance of the parties' dispute over whether the court should consider in this action the patentability of the Jurgoven patent.

## III.    DISCUSSION

As previously mentioned, pursuant to 35 U.S.C. § 146, "[a]ny party to an interference dissatisfied with the decision of the Board . . . may have remedy by civil action . . . ." In civil actions arising from an interference "the record in the [PTO] shall be admitted on motion of either party . . . without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the PTO when admitted shall have the same effect as if originally taken and produced in the suit." 35 U.S.C. § 146. The Federal Circuit, however, has held that parties to the civil action are not limited to the evidentiary record before the Board. *See Case v. CPC Int'l, Inc.* 730 F.2d 745, 752 (Fed. Cir. 1984). In other words, the district court is authorized to hear new evidence regarding issues raised by the parties or by the Board during the interference. *See id.*; *see also General Instrument Corp., Inc. v. Scientific-Atlanta, Inc.*, 995 F.2d 209, 211 (Fed. Cir. 1993).

"Because the record before the district court may include the evidence before the Board as well as evidence that was not before the Board [the Federal Circuit] ha[s] often described the district court proceeding as 'a hybrid of an appeal and a trial de novo.'" *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345 (Fed. Cir. 2000) (citations omitted).

In *Conservolite, Inc. v. Widmayer*, the Federal Circuit discussed in detail the right to offer new evidence and raise issues in a Section 146 proceeding. 21 F.3d 1098 (3d Cir. 1994). According to the court, "[i]n order for an issue to have been raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified in the PTO's interference rules . . . ." *Id.* at 1102 (citing *General Instrument*, 995 F.2d at 214). The court further explained, however, that even though not contested by motion, an issue "could be deemed to have been raised for § 146 purposes if the record clearly demonstrates that it was placed before the examiner-in-chief and one or more parties insisted that the issue be resolved in the interference." *Id.* (citation omitted). Finally, the court noted that, "[u]nder appropriate circumstances, a district court may exercise its discretion and admit testimony on issues even though they were not raised before the Board. *Id.* Those circumstances could include, "an intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving of a response or further elaboration." *Id.*

In the present case, ITW's complaint alleges that the Board erroneously ruled "that the issue of lack of patentability based on prior art, and raised by [ITW], does not have to be addressed," and seeks review of the patentability issue. (D.I. 1 ¶ 11C.) Accordingly, ITW contends that it properly placed the patentability of the Jurgoven patent before the Board. Conversely, Frito-Lay argues that the patentability issue is not properly before the court and, as a result, the court should not determine

4

the patentability of the Jurgoven patent in this case. (D.I. 16, at 2.) In support of its argument, Frito-Lay points out that the Board decision under review expressly did not determine the patentability issue. Frito-Lay also provides that ITW did not raise the patentability issue during an early phase of the interference, even though it had a full opportunity to raise it under the PTO rules. Last, Frito-Lay contends that ITW's "mention" of the patentability issue to the Board during briefing on priority cannot inject that issue into this case. (D.I. 16, at 3.) Although a close call, the court cannot agree with Frito-Lay's position, and will permit the patentability issues raised in ITW's priority briefing – the patentability of the Jurgoven patent over the alleged Pac Expo prior art demonstration – to go forward in this action.

As previously mentioned, the Federal Circuit has determined that an issue is raised for purposes of Section 146 if the record demonstrates that it was placed before the Board and one or more parties insisted that it be decided in the interference. Here, although ITW did not raise the Section 102(a) and (b) patentability issues through the proper procedural vehicle, i.e. a preliminary motion or belated preliminary motion delayed for good cause, the record clearly demonstrates that ITW raised the issue with the Board during the judgment motion phase of the interference and insisted that it be resolved during the interference. ITW first raised the issue of patentability over the prior art in its motion for judgment, wherein it contended that "[e]ven if Jurgoven's naked idea for a pinch grip opening bag could be considered 'conception' of the inventions . . . , such an idea would not be patentable to Jurgoven because he merely derived these ideas from Ramsey or from prior art in existence more than one year before Jurgoven's effective filing date." (D.I. 17 at A28.)

ITW's declarations submitted with and in support of its motion for judgment support the

court's conclusion that ITW raised the issue of patentability over the alleged Pac Expo prior art demonstration. For example, the declaration of Steven C. Mulder ("Mulder") states that he attended the Pac Expo in November 1996, where he demonstrated opening Minigrip TD zipper packages "by applying an outward force on the side walls of the package below the closed zipper, so as to cause the zipper to open from the product side and then the top seal to pop open." (D.I. 19, at B81 ¶¶ 7-8.) Robert E. Hogan ("Hogan") also submitted a declaration addressing the demonstration at the Pac Expo, which states that he and Mulder demonstrated how to open sealed packages "by applying an outward force on the side walls of the package." (Id. at B88-89 ¶¶ 14-15.) Hogan's declaration further states that he is "virtually certain that some of the Frito-Lay representatives saw the demonstration bags being opened with [the] pinch grip method . . . ." (Id. at ¶ 16.)

ITW's opposition to Frito-Lay's motion for judgment further lends support to the court's conclusion that ITW raised the issue of patentability. In its opposition, ITW states that "to the extent that Jurgoven's 'idea' to pinch-grip open a zipper bag . . . could be considered a conception of an invention, such a 'conception' would not be patentable under 35 U.S.C. §§ 102(a) and 102(b), in light of the pinch-grip opening of zipper bags by Robert Hogan and Steven Mulder at a November 1996 packaging trade show." (D.I. 17, at A84.) ITW's opposition also includes a detailed discussion regarding the alleged unpatentability the Jurgoven patent under 35 U.S.C. §§ 102(a) and 102(b). (D.I. 17, at A96-99.) Specifically, ITW states that Jurgoven's "January/February [1997] idea . . . would be unpatentable in light of the demonstration by Messrs. Hogan and Mulder in November 1996 of the opening of a zipper package using a pinch grip." (Id. at A96.) ITW further discusses the criteria for "public use" under Section 102(b) and argues that "Messrs. Mulder and Hogan's November 1996 demonstration of pinch grip opening of a reclosable bag meets those

criteria," because it was "a fully-enabling demonstration of Mr. Jurgoven's 'invention.'" (Id. at A97-A98.) ITW uses the same facts to argue that the Jurgoven idea is not patentable under Section 102(a), noting that the Pac Expo demonstration "was commensurate in scope with Jurgovan's conception." (Id. at A98.) In addition, ITW specifically requested that the Board determine the patentability of the Jurgoven patent in its "List of Issues" to be considered. (D.I. 19, at B142) ("Jurgoven's ideas of December 1996/January 1997 for a pinch grip reclosable package were anticipated under 35 U.S.C. § 102 by a public display of a pinch grip openable reclosable package in November 1996.").

Further, Frito-Lay's own submissions support the court's conclusion that ITW raised the patentability issue with the Board. For example, in its reply to its motion for judgment, Frito-Lay argues that the unpatentability issue is untimely, but also addresses the merits of the issue, asserting that "Ramsey's argument has no merit because Ramsey fails to establish that it placed anything into the public domain at PacExpo." (Id. at A126) ("The declarations of Hogan and Mulder fail to specify, *inter alia*: (1) what packages were allegedly pinch-grip opened at PacExpo, (2) what features those packages had, (3) what the results were of the alleged attempts to pinch-grip open the bags, (4) whether these activities met all limitation[s] of the Counts, and (5) whether any member of the public ever witnessed the alleged demonstration."). Frito-Lay concludes by asserting that ITW's argument regarding Sections 102(a) and (b) should be rejected because it has no merit. Thus, even though it argued that the patentability issue was untimely, Frito-Lay addressed the issue on the merits.

Finally, the Board's opinion demonstrates to the court that ITW raised the patentability issue and insisted on a Board ruling with respect to that issue. Although the Board chose not to resolve the patentability issue, its opinion acknowledges that the issue was raised, albeit improperly, by ITW. (Id. at A208 n. 10) ("We decline to make any ruling on unpatentability of the involved claims based on this information [the alleged Pac Expo demonstration by Hogan and Mulder] because Ramsey [ITW] did not file a timely preliminary motion based on this material information."). Given the foregoing analysis, the court concludes that the issue of patentability of the Jurgoven patent is properly before it in this action.[5]

Dated: July 9, 2007                                    /s/ Gregory M. Sleet
                                                       UNITED STATES DISTRICT JUDGE

---

[5] That is not to say that ITW may raise new patentability arguments before this court. Indeed, the court will permit only those issues raised in the priority briefing before the Board – Section 102(a) and Section 102(b) patentability based on the alleged demonstration of the technology at issue during the November 1996 Pac Expo – to be part of this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ILLINOIS TOOL WORKS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-54 GMS |
| v. | ) | |
| | ) | |
| FRITO-LAY NORTH AMERICA, INC., f/k/a RECOT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### **ORDER**

For the reasons stating in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Frito-Lay's request (D.I. 16) that the court not determine patentability in this action is DENIED.

Dated: July 9, 2007                                /s/ Gregory M. Sleet
                                                              UNITED STATES DISTRICT JUDGE